**United States District Court**
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SHEILA O'CONNELL COOPER § | |
| § | |
| v. § | CASE NO. 4:04CV271 |
| § | (Judge Brown/Judge Bush) |
| THE PAMPERED CHEF, LTD, ET AL. § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

  Plaintiff , Sheila Cooper, initially filed this action in state court against The Pampered Chef Ltd.  and Doris Christopher, Defendants.  The Defendants removed this case asserting diversity of jurisdiction.  By her amended complaint, Cooper alleges that she was employed at the executive level with The Pampered Chef from January 2001 until May 2003.  Cooper states that in her initial discussions with Christopher, who was the chairwoman and majority shareholder, Cooper informed Christopher that she did not want to associate with a company which would be acquired.  Cooper maintains that she was assured that the company had no acquisition plans.  The company was acquired in October of 2002.  Cooper resigned in 2003 and subsequently filed suit.

  The historical relationship of the parties is not in dispute.  Christopher interviewed Cooper for potential employment in the fall of 2000.  Cooper accepted employment in October 2000.  She began her employment on or about January 3, 2001, as The Pampered Chef's President and Chief Operating Officer.  Sometime in April of 2002 Christopher asked Cooper to assist in exploring the possibility of a sale of the company to an outside concern.  On July 1, 2002 The Pampered Chef entered into a Retention Agreement with Cooper ostensibly to encourage Cooper to remain with the

1

company and assist with the sale. The Retention Agreement provides that Cooper would receive certain benefits if the Company experienced a change in ownership control as defined in the Employment Agreement. One of the benefits Cooper was to receive was her base annual salary plus her Step I bonus if she left at any time within one year after a change in control of the company's ownership. The Step I bonus was paid pursuant to the company's bonus deferral plan. Cooper was customarily paid 40% of her base salary under this plan. Neither party provided the underlying document with their respective motions. The document was furnished after the Court requested the parties to furnish it along with additional briefing on issues raised by the Court. The agreements specify that a change of ownership occurs when the Christopher family no longer owns 50% of the company. The change of ownership occurred in October 2002. Prior to the acquisition and change in control, Warren Buffet sent a letter to Cooper and Christopher outlining their new compensation structure as a part of the Berkshire-Hathway companies. In his letter Buffet states, "This is to confirm the *bonus* arrangement we talked about when you were here. Your base salaries will be the salary and the most recent annual bonus that you have received (you should , of course, also take normal bonuses for 2002 which can be prorated over the 12 months of the calendar year). (I)n future years, the two of you will receive 10% of pre-tax earnings above $140 million...." As a result of this letter, Cooper's annual salary increased to $1.2 million dollars. The letter does not mention the Step I bonus or for that matter the Step II bonus under the company's plan. The Pampered Chef states that the new bonus structure did away with the old bonus deferral plan. Cooper states that was not her understanding and that the Retention Agreement which mentions the Step I bonus provision was never modified or changed.

      Cooper signed three agreements with the company: an Employment agreement, a First

Amendment to the Employment Agreement and a Retention Agreement. Cooper alleges that her diligence and skills substantially improved company performance and attracted substantial attention from prospective buyers. Cooper resigned in May 2003. She claims that $480,000 is still due her which would be the 40% guaranteed minimum of her annual base salary under the step I bonus plan.

Cooper also sues for defamation. Cooper states that the defendants issued a statement stating that Cooper had resigned to spend more time with her family and that she held her leadership post for only five months before she left. She claims that the defendants published a statement in a leading Chicago business journal that Cooper had abruptly left the company. She also claims that the defendants have interfered with The Pampered Chef's contractual obligations to Cooper. Cooper has sued for breach of contract, promissory estoppel, tortious interference with contract, fraud, negligent misrepresentation, libel and defamation and defamation by innuendo and implication. Her demand for relief also requests exemplary damages. Both parties have moved for summary judgment.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted).

## Tortious Interference with Contract

Defendants seek summary judgment on Cooper's claim for tortious interference. Cooper alleges that Christopher "acting on her own behalf and for personal motives and gain, willfully and intentionally interfered with Cooper's valid contracts to serve her own personal interests. To show tortious interference with contract, Cooper must show: (1) the existence of a contract; (2) Christopher's awareness of the contract; (3) defendant's intentional inducement of breach; (4) a subsequent breach; (5) that the interference was unjustified; and (6) damages. *Pratt, Bradford & Tobin, P.C. v. Terminal R.R.*, 876 F. Supp. 1034, 1036 (S.D.Ill. 1994). A party cannot be held liable for inducing the breach of her own contract. *Laser Indus. Ltd. V. Eder Instrument Co.,* 573 F. Supp. 987, 993 (D.C. Ill. 1983). An officer's or director's actions on the corporation's behalf are deemed to be the corporation's actions. *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995).

When a decision serves the corporate interest, it is presumed that the officer's motivation was

to benefit the corporation. *See Watson v. Nat'l R.R. Passenger Corp.*, 1989 WL 10833 (N.D. Ill., Feb. 8, 1989).

In her amended complaint, Cooper states that the interference (presumably the failure to pay the Step 1 bonus) was motivated by personal motives and gains and because of the personal liability Christopher assumed for such contracts in connection with the sale of the company. Cooper does not allege that Christopher was not acting in the best interest of the company. In fact, Cooper has filed no response, brief or evidence to counter Defendants' arguments on this claim. Cooper alleges that the sale of the company by the Christopher family brought in nine hundred million dollars. It appears that, as a result of Cooper's departure, she was paid almost seven million dollars pursuant to the various agreements. Cooper has put forth no evidence that the failure to pay the remaining 480,000 dollars she says is due was driven by Christopher's personal motives rather than a corporate interest. There is absolutely no merit to this claim. Defendants are entitled to judgement. In any event, failure to adequately brief an issue is tantamount to a waiver of that issue. *See generally Robinson v. Guar. Life Ins. Co.*, 389 F.3d 475, 481 n.3 (5th Cir. 2004). The Court also finds that Federal Rule of Civil Procedure 56(e) requires some response by the Plaintiff. Without such response, summary judgment is appropriate.

### **Promissory Estoppel**

Plaintiff pleads that defendants made multiple promises to Cooper upon which Cooper relied. In her response, Cooper states that defendants made promises to her that exceeded any written agreements. She states that she has provided evidence of her detrimental reliance on the Defendants' promises. Plaintiff has provided no guidance to the Court as to what she is referring.

The Court notes that the parties agreed that Illinois law governed the Retention Agreement. In Illinois, promissory estoppel is available only as a defense and not as a cause of action. *ESM Dev. Corp. v. Dawson*, 795 N.E. 2d 397, 401 (2003). There is no merit to this claim. Defendants are entitled to judgment.

## **Fraud**

Cooper also claims that the Defendants falsely represented that The Pampered Chef would not be sold. She relied on this representation as an inducement for employment. She then goes on to say that shortly after accepting employment, she was asked to assist in the sale of the company. Cooper testifies that her revelation as to Defendants' deceitfulness occurred in July 2001 when she was asked to get the company ready for sale. Fraud requires: proof of a material representation of an existing fact; that was false when made; that the speaker either knew it was false, or made it without knowledge of its truth; that the speaker made it with the intent it should be acted upon; that the party acted in reliance; and that the party was injured as a result. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

Cooper contends that a false promise of future performance is actionable as a false representation. *See Turner v. Biscoe*, 171 S.W.2d 118, 119 (Tex. 1943). A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intent of performance at the time it was made. *Herod v. Baptist Found. of Texas*, 89 S.W.2d 689, 695( Tex. App.--Eastland 2002, no pet.). Cooper says that the circumstantial evidence shows that the intent of Christopher was to lure Cooper into the company so it could be sold with quality management in place. This is evidenced by Christopher's prior attempts to sell the company and by Christopher's

express orders to get the company ready for sale soon after Cooper came on board. Christopher points out that the employment agreement contains a change of control clause. Christopher has submitted an affidavit that, at the time Cooper was hired, she had no intention to sell the company. In fact, she states that Cooper suggested that the company be sold. The Court finds that there would be a fact issue as to fraud except that Plaintiff has not shown how she was injured. Cooper has not filed an affidavit or submitted any evidence as to how she was injured by these representations. In her Motion for Summary Judgement, Cooper states that she thought she would have a lifetime job with the company and could have stood to potentially earn more. However, the employment agreement provides that either party may terminate the contract with 60 days notice. Further, it was Cooper who "voluntarily resigned"(Am. Comp. ¶ 22). The Court finds that Cooper has not shown how she was injured by these representations. In fact, she was able to negotiate a Retention Agreement and also a lucrative increase in salary from Buffett, much to her credit. The Employment Agreement also recognizes that Cooper could be terminated on a change of control by the Christopher family. Furthermore, Cooper states that it was her relationship with Christopher and not her relationship with Buffett or any other new officers that led to her departure. Cooper has shown no connection between false promises and her departure from The Pampered Chef. Cooper had the choice to stay with the company or leave with additional compensation. She chose the latter course. Both parties cite to Texas law. The Court assumes that both parties believe that Texas law applies and not Illinois law, which applies a longer limitation period to fraud claims. That being the case, it is clear that Plaintiff knew or should have known of the fraud more than two years before suit was filed. She testified that knowledge of a potential sale came to her as early as July 2001. However, since this matter was not raised by affirmative defense or in the Motion, Defendants have waived

this defense.  For the reasons cited herein, Defendants are  nevertheless entitled to summary judgment on the fraud claim for Cooper's failure to show how she was injured.

### Negligent Misrepresentation

Cooper sues for negligent misrepresentation.  Cooper alleges that misrepresentations were made in order to induce Cooper to enter into employment agreements with The Pampered Chef.  It is not clear how Cooper alleges she was injured.  Defendants have moved for summary judgment on this claim.  Cooper has not responded.  Defendants state that the claim is barred by the Texas statute of limitations.  However, Defendants failed to plead the statute as a defense.

An affirmative defense not raised in a responsive pleading need not be considered when raised for the first time in a motion for summary judgment.  *See generally MCI Telecomm. Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 666 (N.D. Ill. 1994);  *Minuteman Press Int'l, Inc. v. Matthews*,  232 F. Supp. 2d 11 (E.D.N.Y. 2002).  Other courts have been less strict and allowed consideration under different reasoning.  *See United States Fire Ins. Co. v. City of Warren*, 176 F. Supp. 2d 728 (E.D. Mich. 2001) (no surprise or unfair prejudice); *Boston v. Takos*, 2002 WL 31663510 (W.D.N.Y. October 4, 2002) (treated as motion to amend); *Phillips v. Heydt*, 197 F. Supp. 2d 207 (E.D. Pa. 2002) (time for amendment deadline has not passed).  Within the Fifth Circuit, a failure to raise an affirmative defense in an answer will not constitute waiver if it is raised in sufficient time and the plaintiff would not be prejudiced in its ability to respond.  *Allied Chem. Corp v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983) (defense raised in Court's pretrial order); *Lucas v. United States*, 807 F.2d 414 (5th Cir. 1986) (defense not raised was legal issue not requiring factual determination).  Here, Defendants have waited too long.  Motions and briefs

have been submitted. Whether the claim would have been barred under the Illinois or Texas limitations statute has not been preserved.

Notwithstanding this analysis, Defendants are entitled to judgment whether Illinois law or Texas law applies. In *Brogan v. Mitchell Int'l, Inc*. 692 N.E.2d 276,229 (Ill. 1998), the plaintiff brought suit for negligent misrepresentation against his employer. The plaintiff alleged that the employer told him that the company was financially sound and would double in size within the next several years. When conditions soured, plaintiff was fired and sued, alleging that but for the representations he would not have gone to work for the employer. The Illinois Supreme Court stated that in order to state a cause of action, the plaintiff must first allege facts establishing a duty owed by defendant to communicate accurate information. *Id.* at 505. The Court recognized only two areas where such a duty arises, neither of which is applicable here. The Court held that there is no duty to avoid representations that cause only emotional harm. "The limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which would impede the flow of communication in society." *Id.*

The Court finds that, under Texas law, Plaintiff also cannot recover. In order to determine whether a claim falls under tort or contract law, the substance of the claim must be examined. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex. 1986). If the injury is only the economic loss from a contract itself, the action should be one for breach of contract. *Id.* at 618. Cooper has pointed to no other independent injury to justify maintenance of this claim. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663 (Tex.1998). Under all the circumstances noted, Cooper's claim is without merit and Defendants are entitled to judgment.

**Defamation**

Cooper alleges defamation concerning two statements appearing in *Crain's Chicago Business*. First, *Crain's Chicago Business* states that Cooper "abruptly left the Addison based company (The Pampered Chef)." The article goes on to state that a Pampered Chef spokeswoman stated, "Cooper resigned to spend more time with her family." To be liable for defamation, the defendant must have actually published the statements. *WFAA-TV Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) cert denied, 526 U.S. 1051 (1999). Publication is an essential element to a cause of action for defamation. *Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 188 (Ill. App. 2005). There is absolutely no evidence that the first statement was made by or attributed to The Pampered Chef. Therefore, Cooper cannot maintain an action for defamation against the defendants in regard to this statement. The second statement ostensibly comes from a Pampered Chef spokeswoman. Therefore, the question is whether the statement was false, capable of injuring Cooper's reputation, and negligently disseminated. *Id.* The elements for defamation under Illinois law do not differ greatly from Texas law. *See generally, Gibson v. Phillip Morris, Inc.*, 685 N.E.2d 638, 643 (Ill. App. 1997). Illinois law recognizes five categories of words as defamatory per se for which special damages may be awarded: (1) commission of a crime; (2) infection with some loathsome disease; (3) words imputing an inability to perform or want of integrity in discharge of office or employment; (4) words that prejudice a party or impute lack of ability in her trade, profession or business; or (5) words imputing adultery or fornication. *Walls v. Lombard Police Officers*, 2000 WL 631302 (N.D. Ill. May 12, 2000). Whether particular language is capable of a defamatory meaning is a question of law for the Court. *Carr v. Brasher*, 776 S.W. 2d 567,569 (Tex. 1989). *Homerin v. Mid-Illinois Newspapers*, 614 N.E.2d 496 (Ill. App. 1993). *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997). The alleged defamatory

statement must be considered in the context and in light of the circumstances surrounding its publication. *Id.* at 326. Therefore, whether the Court looks to Illinois law or Texas law, the analysis is the same.

Christopher states that she did not cause the publication to be disseminated and does not know anyone in the organization that did so. However, the Court finds that there is at least a fact issue as to publication. The real question is whether the statement is defamatory. Cooper states that as a professionally working woman, this statement casts her in an bad light. Part of the second attributed statement is true. Cooper resigned. Cooper states that the other part of the statement, that she resigned to spend time with her family, is false. Cooper's rise in the executive ranks has been nothing short of stellar. She was previously an Executive Vice President/ General Counsel and member of the Board of Directors for Mary Kay Inc. Prior to joining Pampered Chef, she was President and Chief Operating Officer of Beauticontrol. All companies in which she has played a leadership role focus on either beauty products or kitchenware. The target audiences for these products are primarily women through home sales, although some men also sell and buy these products. In light of all of the circumstances, the Court must consider whether the statement regarding "spending more time with the family" is defamatory considering that her career has dealt with products that are oriented for people who wish to earn extra income but spend more time in the home and presumably with the family. The Court holds that such statement is not defamatory.

## Breach of Contract

Cooper has also sued for breach of contract. Cooper claims that under the Retention Agreement she is entitled to a severance in the amount of her base salary plus her Step I bonus, among

other consideration. Cooper admits that she has received the full benefits of the Retention Agreement except as to the Step I bonus. Paragraph 3 of the Retention Agreement addresses the severance benefits. If Cooper terminates her employment at any time after the Closing date and before the one year anniversary of the Closing Date for any reason other than a termination by the Company for cause, she is entitled to a payment equal to one year of her Base Annual Rate as defined in the Amended Employment Agreement at the rate in effect on the date of such termination. She is also entitled to the Step I bonus relating to the calendar year in which such termination occurs calculated under Section 3(b)(i) of the Amended Employment Agreement. The Step I bonus is provided under the Company's Bonus Deferral Plan. Although no party cited or referred to this plan, the Court has reviewed the plan. Of interest is that to receive the Step I bonus, Cooper has to be an eligible participant who is designated by the Board as an eligible participant in the plan with respect to any calendar year. The plan also provides that it may be terminated retroactively or otherwise. None of these issues have been presented or preserved for the Court's review. It appears that The Pampered Chef neither read its own agreements nor took any action with respect to the change in control. Had these issues been addressed, then The Pampered Chef's arguments might have prevailed.

      The Amended Employment Agreement provides that the Step I bonus is equal to a guaranteed minimum of 40% of Cooper's Base Annual Salary. Under the Retention Agreement, if Cooper resigns within the one year anniversary of the change in control of the company, she receives her base annual salary plus her Step I bonus relating to the calendar year in which such termination occurs. The Court finds that Cooper need not resign with reason to be eligible. The applicable paragraph references that only the amount is calculated pursuant to 3(b)(i) of the Amended Employment Agreement, not the requirement as to eligibility; *i.e.* with good reason.

The Pampered Chef argues that Buffett's letter of September 18, 2002 changes the bonus structure. Therefore, Cooper, by acceptance of the benefits, has waived her rights to insist on the Step I bonus. Cooper alleges that she never signed the letter nor has she ever waived her rights to receive the Step I bonus on resignation. Paragraph 7 of the Retention Agreement states that the agreement shall not create any obligation on The Pampered Chef's part to continue any existing compensation plans. The question is whether the letter from Buffett established a new compensation bonus plan or in any way modified the old plan. Under Texas law, waiver is a voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 313 (5th Cir. 2005). The Retention Agreement provides that any modification to the agreement must be a written agreement entered into by both parties. Here, there is no such modification. Thus, the only issue for the jury to consider is waiver. The Court finds that there is a fact issue on the issue of waiver and that neither party should have summary judgment on the contract claim. The Court will leave the remaining issue for the jury's consideration as to whether Cooper has been fully compensated or whether she is $480,000 in the red.

## RECOMMENDATION

Based upon the foregoing, it is recommended that Defendants' Motion for Summary Judgment(Dkt. #19) be granted in part and denied in part and that Plaintiff's Motion for Summary Judgment(Dkt. #20) be denied.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A.

§ 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 10th day of May, 2005.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE